QUINN EMANUEL URQUHART & SULLIVAN, LLP
Steven G. Madison (Bar No. 101006)
stevemadison@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

John M. Potter (Bar No. 165842)
johnpotter@quinnemanuel.com
50 California St., 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Attorneys for Ayman Shahid

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>vs.<br><br>AYMAN SHAHID,<br><br>Defendant. | CASE NO. 14-CR-271-YGR<br><br>**SENTENCING MEMORANDUM, MOTION FOR DOWNWARD DEPARTURE, AND MOTION FOR EVIDENTIARY HEARING OF DEFENDANT AYMAN SHAHID**<br><br>**[DECLARATION OF STEVEN G. MADISON AND SUPPORTING EXHIBITS FILED SEPARATELY]**<br><br>Date: March 2, 2017<br>Time: 3:00 p.m.<br>Judge: Hon. Yvonne Gonzalez Rogers<br>Courtroom: 1, Fourth Floor |

Defendant Ayman Shahid, by and through his counsel, hereby submits his sentencing memorandum, motion for downward departure, and motion for evidentiary hearing. The exhibits referenced in the sentencing memorandum are being separately filed with the Declaration of Steven G. Madison.

DATED: February 24, 2017

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By [signature]

Steven G. Madison
Attorneys for Defendant Ayman Shahid

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1
II. MR. SHAHID'S ACCEPTANCE OF RESPONSIBILITY AND REMORSE ..... 1
III. THE PLEA AGREEMENT AND THE PSR ..... 2
IV. DEFENDANT SHAHID'S BACKGROUND AND PERSONAL HISTORY ..... 3
V. DEFENDANT SHAHID'S SUBSTANTIAL ASSISTANCE ..... 6
Mr. Shahid has been interviewed by the government over a dozen times. He provided highly probative information during those meetings, as described below. ..... 6
A. Information About Discovery Companies ..... 6
B. Information About The Roles Albert Seeno III and Jeanne Pavao Played In The Builder Bailout Fraud ..... 7
C. Death Threat from Albert Seeno III ..... 7
VI. FACTORS IN MITIGATION ..... 8
A. Victim Impact Statement ..... 8
B. Complicity of Bank "Victims" ..... 9
C. Advice of Counsel ..... 10
D. Disparate Treatment of Culpable Individuals Most Responsible for Mortgage Fraud ..... 10
E. Disparate Treatment of Culpable Individuals Most Responsible for Discovery's Builder Bailout Fraud ..... 11
F. Seeno III Never Prosecuted For His Threat To Kill Mr. Shahid ..... 11
VII. SECTIONS 5K1.1 AND 5K2.0 AND 18 U.S.C. § 3553 SUPPORT A SUBSTANTIAL DOWNWARD DEPARTURE ..... 12

# I. INTRODUCTION

Defendant Ayman Shahid will appear before the Court for sentencing on March 2, 2017, after pleading guilty on August 20, 2015 to count one of the Indictment, charging conspiracy to commit bank fraud in violation of 18 U.S.C. §§ 1344 & 1349.

Under all the circumstances, and most importantly Mr. Shahid's extensive and substantial cooperation (leading directly to the guilty plea of Discovery Sales International), the unique factual and legal circumstances of the case, and the chilling death threat made to Mr. Shahid by Albert Seeno III in retaliation for Mr. Shahid's cooperation, a sentence reflecting a substantial downward departure is fully appropriate here.

# II. MR. SHAHID'S ACCEPTANCE OF RESPONSIBILITY AND REMORSE

Mr. Shahid deeply regrets the actions he took in connection with the Discovery companies'[1] builder bailout scheme. He recognizes that his criminal acts were inexcusable and makes no excuses for them. At the time, he felt trapped by the pressure placed on him by Albert Seeno III ("Seeno III"). Yet he wishes that he had been strong enough to stand up to the Seeno family and say "no" to their fraud. (*See* Presentence Investigation Report ("PSR") at ¶ 20.)

In the almost 10 years that have passed since the charged activities, Mr. Shahid has committed himself to living an honest and law abiding life. He is, today, not the same person he was then. Mr. Shahid is now married and the father of a four-year-old daughter, Jasmine Shahid. Mr. Shahid hopes that the Court will see that he has lived his life mostly as a law-abiding citizen and not as a criminal.[2] Not a day goes by that he does not regret what he did at Discovery. (*See*

---

[1] The Seenos' Companies are referred to collectively herein as the "Discovery companies" and are only identified more specifically where necessary.

[2] The PSR makes reference to Mr. Shahid's acquisition of a number of domain names, including those containing the names Pavao and Seeno. (PSR at p. 21.) Neither Mr. Shahid nor anyone to his knowledge used the domain names, and Mr. Shahid has since relinquished any and all rights to those domain names. The government concluded that no misuse of the names ever occurred. (*See* Madison Decl. ¶ 2.)

Ayman Shahid's Letter to the Court, Exhibit A to the Declaration of Steven G. Madison, and Fatima Shahid's letter to the Court, Exhibit B to the Declaration of Steven G. Madison.)[3]

## III. <u>THE PLEA AGREEMENT AND THE PSR</u>

Under the Plea Agreement (Exhibit C), the parties agreed that the Total Offense Level should be 31, that Mr. Shahid falls into Criminal History Category I, and that he therefore faces a *pre-departure* sentencing range of 108 to 135 months. The PSR agrees and calculates a Total Offense Level of 31/CHC I, again *pre-departure*. Working from that pre-departure offense level and sentencing range, the Probation Officer recommends a sentence of 48 months in custody, three years supervised release, a fine of $5,000, and a special assessment of $100. The PSR correctly notes that Mr. Shahid committed the instant offense at the direction of those above him in the Discovery companies, that fraud pervaded the industry generally, and that dishonest business practices pre-dated Mr. Shahid's tenure with Discovery specifically. (*See* PSR at ¶ 81; *see also id*. at p. 21 of 23.)

The parties agreed in the Plea Agreement, and the PSR concurs, that a four-level downward departure pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2B1.1, (comment. 20(c)) should be applied because the offense level substantially overstates the seriousness of the offense. Application of this downward departure results in an offense level of 27 and a guideline range of 70 to 87 months. Applying the Probation Officer's recommended sentence calculation to this *post-departure* range would produce a sentence of approximately 31 months.

The government has indicated that it intends to file a § 5K1.1 motion, recommending that the Court depart seven levels downward in recognition of Mr. Shahid's substantial assistance to the government. Further, Mr. Shahid hereby moves the Court for a downward departure under §

---

[3] All references herein to Exhibits are to the Exhibits to the Madison Declaration unless otherwise indicated.

5K2.0(a)(2) (departures based on circumstances of a kind not adequately taken into consideration) based on the threat Albert Seeno III made to kill Mr. Shahid after Mr. Seeno III learned of Mr. Shahid's cooperation.

## IV. DEFENDANT SHAHID'S BACKGROUND AND PERSONAL HISTORY

Below, we supplement the information in the PSR so the Court has a more comprehensive picture of the defendant.

Mr. Shahid, now 41 years old, was born in Cairo, Egypt. (PSR at ¶ 42.) He was naturalized as a United States citizen when he was a child. He currently lives with his wife, Fatima Shahid nee Sharif, and his four-year old daughter, Jasmine Shahid, in Southern California. He is a Coptic Orthodox Christian (PSR at ¶ 43), although because of their appearance and names they are sometimes perceived as Muslims. He and his family decided to move to Southern California following the entry of his guilty plea, to distance themselves from the Seenos and the threats and intimidation they had experienced. Regrettably, as addressed below, Albert Seeno III found Mr. Shahid and persisted in his threatening conduct.

Many friends, colleagues, and family members of Mr. Shahid have written letters expressing their positive views of Mr. Shahid's kindness, good deeds or fair dealing with them and others. We are submitting herewith 17 letters in support of the defendant. Those 17 letters are from Fatima Shahid, Sherif Meleka, Maged Meleka, John Meleka, Simon Fung, Renee Brown, Nicolas Bour, Nancy Sidaross, Maha Awad, Jennifer Palazzo, Jeno Vincent Inzerillo, Iman Marghoob, Kristine Rossovich, Gregg Brown, Humira Sharif, Michael R. Munns, and Fred Shahid.

Below are excerpts from those 17 letters.[4] (All references to Exhibit numbers herein are to the exhibits attached to the Declaration of Steven G. Madison and Supporting Exhibits filed herewith.)

Renee Brown – Former Colleague (Exhibit D)

"While his love and dedication to his wife, father and extended family are very apparent in spending any measure of time with him, what is most touching to me, is the relationship he has with his young daughter, Jasmine. It is very heart warming to see someone I previously knew as a tough business man softened to the core by this little girl. Everything he does is from a place of making the best possible life for his wife and little girl."

Kristine Rossovich – Former Colleague (Exhibit E)

"He just cared. He cared about the Company he ran, the family that owned it, the employees that worked for it, and the customers we served. Never in my 25+ year career have I ever had the privilege to work for such a remarkable leader."

Gregg Brown – Friend of 28 Years (Exhibit F)

"Growing up with Ayman, I spent a lot of time around his family. He was raised in a strong household with high moral standards. Standards he still embraces and applies to his own family. We both grew up in Christian households and Ayman still lives his life as one. Ayman was like a big brother to me."

Maged Meleka – Second Cousin (Exhibit G)

"Ayman has always been the anchor of our family, especially during the difficult times. He took great care of his mother throughout her sickness until the day that she departed. He showed great selflessness by rearranging his wedding date and changing the family's plans at the last minute, just to see his mother happy and smiling for the last time. Ayman also played an integral role in keeping the family in high spirits when he was waiting in the airport for his uncle, only to

---

[4] The people who submitted letters in support of Mr. Shahid are willing to provide further information or answer questions if the Court wishes to hear from them.

receive the the [sic] sudden shocking news that he has passed away mid-flight. Without Ayman's strong will, I don't know where our family would be today."

Simon Fung – Childhood Friend (Exhibit H)

"I honestly can't think of anything negative to say when it comes to Ayman Shahid. He is my brother, my mentor, and possesses the most important human qualities that most people strive for, but rarely achieve."

Sherif Meleka – Cousin (Exhibit I)

"This investigation led to a real change in perspective, and true regret of any wrongdoing that Ayman may have committed in the eyes of the society, his community, his immediate family, including me personally."

Michael Munns – Family Friend (Exhibit N)

"Ayman has a Samaritan's heart in every aspect of life. If Ayman knows someone needs help, even if he doesn't know them personally, he has gone out of his way to help them. One recent example of Ayman's charitable heart is when the two of us were walking on the sidewalk and we came upon a homeless man sleeping on the street, Ayman insisted that we walk several blocks away from our destination to a McDonald's so he could purchase the homeless man several hamburgers. I asked Ayman why he did that and he told me because that's what Jesus would do."

Jennifer Palazzo – Childhood Friend (Exhibit R)

"With Ayman, you cannot help but fall in love with his enthusiasm, passion, compassion and the love he has for others and for life. He is one of those special and rare people that would give you the shirt off his back. He would give up his umbrella, stand in the open rain getting drenched to ensure that you did not get a single drop on you. He is a gentleman, meaning that he not only possesses impeccable manners, but he is a gentle man."

Humira Sharif – Sister-in-Law (Exhibit S)

"Kind, caring, considerate, empathetic, loving, thoughtful and generous are just a few words we use to describe my Brother in-law Ayman Shahid. I have known Ayman for well over 6 years and he has become more than just an in law. He has become our brother, friend and confidant. He has been there for my family during the good times and the bad. Ayman goes above

and beyond for everyone around him regardless of what he is going through. The amount of love he shows to his family and loved ones is immeasurable. Ayman is an amazing, loving, caring father, husband, son, brother and friend."

## V. **DEFENDANT SHAHID'S SUBSTANTIAL ASSISTANCE**

Mr. Shahid has been interviewed by the government over a dozen times. He provided highly probative information during those meetings, as described below.

### A. Information About Discovery Companies

As a direct result of Mr. Shahid's assistance, Discovery Sales pled guilty to one count of bank fraud in violation of 18 U.S.C. § 1344, and agreed to pay a criminal fine of $8 million with an additional $3 million in restitution. (*See* Exhibit T (East Bay Times News Article, dated December 8, 2016).) According to the government, this was the third largest criminal fine in the history of the District. (*Id.*)

Mr. Shahid provided the government with information on a variety of topics:

- The Seeno incentives, specifically the EMAP and E3P Programs;
- Wells Fargo Bank, including Marty Widergren;
- Chase Bank, including Linda Maxwell;
- The involvement of other Discovery employees, including Jeanne Pavao;
- The forgery of bank and mortgage documents undertaken by Discovery employees;
- Absentee broker fraud;
- Secondary market and lending schemes by Ban of California (Seeno's preferred lender) and its CEO, an ex-Countrywide executive;
- Tax evasion and rate manipulation by Anthony Viscia of Pacific Funding Group and Golden Empire Mortgage;
- Tax fraud by the Seeno companies;
- Understatement of loss caused by the Seeno companies; and
- Seeno financials from 2008 through 2010.

B. Information About The Roles Albert Seeno III and Jeanne Pavao Played In The Builder Bailout Fraud

Mr. Shahid provided valuable information evidencing the role that Seeno III and Jeanne Pavao, general counsel and President of the Discovery companies, played in the builder bailout fraud. Mr. Shahid also provided documents to the government demonstrating the involvement of Seeno III and Pavao in the scheme—documents the government had not already obtained. The evidence established that the Seenos had massive lines of credit that could default if the prices of the home inventory dropped. The incentive programs helped prop up the value of the inventory, thereby preventing default on the credit lines.

C. Death Threat from Albert Seeno III

On June 8, 2016, a Discovery Builder's number, Albert Seeno, III's ("Seeno III") company, called Mr. Shahid's then-place of employment in Southern California. (Exhibit U at ¶ 18 (Complaint and Affidavit filed against Seeno III, dated July 5, 2016).) The caller identified himself as a low-level employee at Discovery Builders and said he was trying to verify Mr. Shahid's employment. (*Id.*) The caller hung up when the employee questioned him. (*Id.*) The same man called back a short time later, but hung up when he was placed on hold. (*Id.* at ¶ 19.) The employee reported the phone call to Mr. Shahid and Mr. Shahid's supervisor. (*Id.* at ¶ 21.) Mr. Shahid reported he believed he was being harassed by his former employer, Seeno III. (*Id.*) His supervisor called the number back to ask Seeno III why he was calling, and when he came on the line Seeno III said, "Hey motherfucker. You're going down! I'm going to kill you! Fuck you!" and hung up. (*Id.* at ¶¶ 22, 24.) The call was made from a speaker phone with Mr. Shahid so Mr. Shahid was able to positively identify the man making the threat as Seeno III. (*Id.* at ¶ 25.)

Significantly, this call took place just five days after this Court declined to accept a plea agreement between the Government and Discovery Sales, questioning why Seeno III was not present and why those who owned the Discovery companies were not being held accountable. (*Id.* at ¶ 31.) On July 5, 2016, the Government filed a sealed Criminal Complaint and Affidavit

against Seeno III for violation of 18 U.S.C. § 1513(b), retaliating against a witness. (*Id.* at p. 2.) In establishing probable cause, the case agent averred:

> "Some of the most significant evidence against DSI, which is owned by SEENO III, was provided to the government by Shahid. . . Shahid provided information about DSI that supports criminal charges against the company. . . In addition Shahid has met with FBI agents and representatives of the U.S. Attorney's Office pursuant to his cooperation obligations. In those meetings, he has provided information regarding the commission and possible commission of federal offenses by DSI and [other] employees of DSI."

(*Id.* at ¶¶ 32-33.)

## VI. FACTORS IN MITIGATION

This case is unique in many relevant respects that mitigate Mr. Shahid's culpability.

### A. Victim Impact Statement

The PSR states it has received one victim impact statement.[5] (PSR at ¶ 18.) The government and Mr. Shahid agree that there should be no restitution in connection with this claim, as the conduct alleged is too attenuated from the instant case. The putative victim, a homeowners' association ("HOA") apparently claims it was induced to enter into a loan agreement with yet another Seeno-controlled entity, Pyramid Land Investment, LLC, to make up for uncollected association dues. (*See* Madison Decl. ¶ 30, Exhibit AA.) Any remedies should properly be sought from Pyramid and Seeno III, not Mr. Shahid. Under the plea agreement herein the victims of the builder bailout scheme were lenders, not any homeowner association, and none of the material facts alleged by the HOA is alleged in the Indictment.

Should the Court not agree with the government and Mr. Shahid that restitution is not appropriate relative to this purported victim impact statement, Mr. Shahid respectfully requests an

---

[5] This statement had not been received by the time of the preparation of the draft PSR; had it been referred to therein Mr. Shahid would have timely objected.

evidentiary hearing under Local Rule 32-5. The evidentiary hearing would address the factual question of whether the HOA is a victim entitled to restitution herein under 18 USC § 3663. The witness to be called would be a representative of the HOA.

B. Complicity of Bank "Victims"

One unique feature of this case is the complicity of the putative victim banks. The government alleged that JP Morgan Chase, Bank of America, Wells Fargo, GMAC, Countrywide Bank, and US Bank were victims of the mortgage fraud described in the Indictment. Notably, however, the Government sued these same banks for perpetrating the very fraud charged in the Indictment! (*See* National Mortgage Settlement Website, http://www.nationalmortgagesettlement.com (Complaint), Exhibit V.) In Spring 2012 – at least two years *after* the commencement of the investigation that culminated in the Indictment herein– the government and the banks stipulated to entry of binding judgments to resolve the government's claims. The same Department of Justice that stands before this Court in the instant case then pursued the banks for fraud related to the packaging and marketing of these loans into mortgage-backed securities. In announcing further settlements with these banks, DOJ explained that the banks knowingly made mortgages to customers who could not afford them, packaged up the toxic loans and sold them on to investors and the U.S. government under the pretense that they were proper loans, when the banks knew very well they were not. (*See id.* (Consent Judgments), Exhibits W, X.)

The government's civil prosecution of these very banks for their massive, systemic mortgage fraud is evidence of their complicity, which mitigates the culpability of Mr. Shahid herein. The language of the government's civil complaints, and more importantly of the judgments that were ultimately entered, is broad and includes the exact same loans described in the Indictment here. The government cannot have it both ways—the banks were not innocent victims on the one hand, and knowing and intentional fraudsters themselves on the other, regarding the exact same loans.

C. Advice of Counsel

Further mitigation of Mr. Shahid's culpability herein is found in the undisputed evidence showing that the incentive programs were reviewed and approved by Discovery's in-house and outside counsel, at the request of Discovery management senior to Mr. Shahid.

With respect to the E3P Program, Mr. Shahid began requesting information regarding disclosures to lenders from Jeanne Pavao, Discovery Sales' General Counsel and President, as early as February 2007. (*See* Madison Decl. ¶ 3.) Gene Miller of the well-known real estate firm Miller Starr Regalia, Discovery Sales' outside counsel, provided an opinion letter analyzing the proposed E3P program, which was provided to Mr. Shahid. (*Id.*) Mr. Shahid's actions in connection with the E3P Program were directly based on advice he received from both inside and outside counsel.

Mr. Shahid likewise relied on advice of counsel in connection with the EMAP Program. Ms. Pavao and Miller Starr reviewed the EMAP program as early as September 2006 as part of Miller Starr's review of Discovery's incentive programs, and subsequently approved the program. (*Id.*) The reliance of Mr. Shahid on this advice and direction of highly experienced lawyers both inside and outside Discovery, and senior management/ownership at Discovery, mitigate his culpability and demonstrate the extent to which he acted at the direction of the owners of the Discovery companies, whose lines of credit were being propped up by the builder bailout scheme.

D. Disparate Treatment of Culpable Individuals Most Responsible for Mortgage Fraud

Mr. Shahid respectfully submits that the Court should consider the government's treatment of other, more culpable individuals, both generally with regard to the mortgage fraud crisis and specifically at Discovery, in imposing sentence on Mr. Shahid herein. It is well-known that the government has not sent any major bank executives to jail—or even brought criminal charges against them—for their role in the residential mortgage scandal. (*See* Exhibit Y.) Many have observed the government is reluctant to pursue those that are principally responsible because they are "too big to jail." (*See* Exhibit Z.)

E. Disparate Treatment of Culpable Individuals Most Responsible for Discovery's Builder Bailout Fraud

Although Discovery Sales did enter a corporate guilty plea and pay a substantial fine and full restitution, none of its principals was charged. Mr. Shahid did not personally profit from the scheme, as he never owned a single share of stock in the Discovery companies; the Seenos owned it all.

F. Seeno III Never Prosecuted For His Threat To Kill Mr. Shahid

Albert Seeno III has not been held personally accountable for his role in the builder bailout fraud from which he and his family profited, and to add insult to injury he was never prosecuted for threatening to kill Mr. Shahid.[6] Seeno III is a powerful, wealthy man with a history of threatening conduct, and an experienced sharpshooter who also somehow still holds a permit to carry a concealed handgun apparently. The threat came on the heels of this Court's rejection of the proposed plea by Discovery Sales which included a declination for Seeno III. Mr. Seeno apparently does not dispute that he said he would kill Mr. Shahid, he simply claims he was angry and did not really mean it. Yet as a result Mr. Shahid and his family live in constant fear that Seeno III can carry out his threat, and Fatima Shahid dreads being alone with her four-year-old daughter, apart from Mr. Shahid, in light of Seeno III's threats. This illegal trauma inflicted on Mr. Shahid is tantamount to punishment that has already been inflicted, and is grounds for a departure under §5K2.0. *See, e.g.*, *United States v. Clough*, 360 F.3d 967 (9th Cir. 2004) (downward departure appropriate where defendant subjected to extraordinary punishment not contemplated by Guidelines where defendant shot by police during arrest).

---

[6] Seeno III was arrested for witness retaliation on the government's complaint, but that complaint was dismissed and no indictment was ever returned.

## VII. SECTIONS 5K1.1 AND 5K2.0 AND 18 U.S.C. § 3553 SUPPORT A SUBSTANTIAL DOWNWARD DEPARTURE

For all the reasons stated above, a substantial downward departure is appropriate herein, under the factors set forth in Sections 5K1.1 and 5K2.0 of the Guidelines and in 18 U.S.C. § 3553.

DATED: February 24, 2017

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By [signature]

Steven G. Madison
Attorneys for Defendant Ayman Shahid